Our first argued case is Q Technologies v. Walmart, 22-24-16-67. Mr. Hirshman? Mr. Hirshman, before you get started, I'm sorry, let me, as a matter of housekeeping as much as anything else, see if I understand. You've asserted three patents here. One of them, the 108, is clearly the focus of your argument and debrief and so forth. But the 473, I don't see that that patent says anything about location in the claims, the asserted claims. So I wonder whether that, we can basically scratch that patent off the list. So the three patents, the parties and the court treated them as being equivalent. They're all in the same family. They come from the same spec. The 473, they do recite the location limitations in dependent claims. Well, but you've asserted, as I understand it, two claims. One is 14 and the other is 16 of the 473, neither of which, as far as I can see, says boo about location. Is that correct? Yes. Okay. If the court determines that location is the key element, then there might be some claims that do not benefit from the determination of the 108. But not the two that you're asserting here. Say again? Not the two that you're asserting here, I take it. Sorry, which two are we referring to? Well, as I understand it, you are asserting 14 and 16 of the 473, isn't that right? Yes, yes, but not the two that we're asserting here, correct. Those two claims don't contain the location element. So to just get cut to the chase, we can basically say disregard the 473, right? I mean, that's the you're not arguing for the validity of the 473. We are, because in addition to the location, particularly at Step 2, we're also relying on the two-dual-pathway architecture, and so if the court finds that argument persuasive, then the 473 would still be in play. But, well, I don't want to take up much of your time on this, but the arguments in your brief are focused on location. Yes, and so maybe I'll start there, if the court doesn't mind. Yeah, go ahead. So thank you, and may it please the Court, the invention here is directed to a specific method that changes how computer file transfer works in three ways. First, it dispenses with URLs. Conventional file sharing uses URLs to specify where the file is and to provide access. Here, the server does that instead using a physical location and an ID. Second, it reverses the conventional process for how users retrieve the files. So instead of reaching out to the server with a request with the URL, instead the server notifies you when you're in the right location. And then third, it transfers the file through the server, but sends the ID directly from user to user. The ID by itself can't be used to get the file, so it can be sent over non-secure channels. So, Your Honor, that's the third limitation that we're relying on. The district court found that these were essentially mental processes that could be performed with pencil and paper, sharing content using a unique identifier. So I think there's two responses to that. The first is the unique identifier in this claim does not function the way the district court believed it did. So the district court's analogy or Walmart's analogy is that you provide a Dewey decimal and get back content. Here, the claim actually, if you look at limitation, if you look at the claim itself, the claim is entirely location-driven. And so, and Walmart admits this at page 16 of their brief. So the determining limitation at step F, where the server determines that the user is within a particular location, then the server sends that user a notification. And then only the user can request the file. So the user can't just go up to the server and say, here is the ID, and receive the file. Instead, the whole process is triggered, as Walmart's brief puts it, by the determining step. And so that's very different from a mental process. And more importantly, it's a specific method that changes how the prior art works. So how would you define what's being communicated? Would it be content, information? It seems to me, at the end of the day, you're talking about information. So yes, we're talking about transferring information. One, that's a basic function of the computer. I kind of like the way you said that, transferring information. And you transfer the information to somebody that you trust, or that has this unique identifier, to the right person. Yes, but the unique identifier- Isn't that what's happening here? You're transferring the information to the right person? In some sense, but this court has recognized, in many cases, that security is a- I kind of want you to answer my question. So what's happening here is, yes, you're transferring the information to certain people who are permitted to receive it. And that includes not just the ID. You're not just giving an ID to a trusted person who can then access it. But the limitation- How is that not abstract? Because that's one piece of the claim. Where the claim actually starts is in limitation F, where the location determination is being made. And then- Now you've added the location determination. So it's not just like adding a location check, right? So in the conventional process, what you would do is you'd go to the server, and you'd say, I have the ID. Please give me back the corresponding file. And that's not how the claim works. In the claim, in order to get the file, you have to go to the location. And then instead of reaching out to the server, the server tells you, here is available content. And only then do you provide the ID. So in this- Isn't this situation, or even the manner that you've described what the claims are directed to in your viewpoint, did we decide this issue in secured mail? So no, because in secured mail, the QR code in that case was simply affixed to the outside of an envelope. And it provided metadata and information about the user, but it didn't change how the mail process worked itself. Here, the patent specifically contrasts the way the invention works against URL-based file transfer. And what URL-based file transfer does is it uses a URL to show where the file is and provides it as a form of access. So for example, if you look at a Dropbox URL, it'll have 20 random characters in it, and the reason is because a hacker can just try a million combination of possibilities and guess the URL otherwise. And so that makes it very inconvenient to transfer. And so what the invention does is it gets rid of the URL. So if I want to transfer a file to everybody in this room, I can upload it to Dropbox, I get a URL that's a million miles long that I have to tell everybody, or I can get everybody's email address and I can email it to them, and they might not want to provide me that. But with the invention, I can upload the file to this location, and I can tell everybody that the ID is Christmas photos. If this was a URL, a Russian hacker could guess Christmas photos easily. They use computers to guess millions of combinations. But the way the invention works, only people in this room will get a notification that this file is even available. And then they can reply with the ID Christmas photos, and if a hacker intercepts that, that's fine, because they're not in this room, and they can't get access. But determination of location itself is an abstract idea. I agree that determination of a location is... We have a number of cases that have basically said determining location is, there's nothing invented, nothing that qualifies as an invention in that. Yes, I agree. And determining location itself is not the focus of the claim. Instead, the focus of the claim is to replace a technical element of how file transfer works with a location and an ID. And so, for example, in TechSec, there was a question of whether... Are you disclaiming the location element of the claim? Not at all. We're saying that this is a scenario where the claim uses location, just like, for example, TechSec used multi-level encryption. And the court there said, multi-level encryption by itself might be an abstract idea. But what the claim is actually directed to is a method for file distribution that makes sure that only the right user can see different parts of the file. And it's using multi-level encryption as a factor, but it is not directed to multi-level encryption. And similarly, on that note, I just want to briefly touch on step two, because the claims using location, even if location is in some sense abstract, the conventional use of location is to locate physical objects, to tell you where you are in relation to the Starbucks. It is very unconventional to use location to provide access to digital files. And so here, location is being used to make a function of the computer itself, file transfer, better and easier and more secure. And that's very similar to Wisner, where location, even if by itself is an abstract idea, was found at step two. If you use location to improve a different function of the computer, that can be eligible at least at step two. Did you make the location-based arguments before the district court? No, we did. So if you look at Appendix 4. I think it's fair to say. I looked at the places that you've cited where you make these allegations that location is critical. And there are only two places, and they're like one sentence each. So is there anything more than 1239 and 1252, I think? Yes. So at 1246, there is a heading that says the specific improvement is found directly in the asserted claims. And we identify the specific improvement as what we call the flow of information because it changes the protocol for file sharing. We don't use the flow of information in our brief, but that term is defined at 1246 at the bottom. At 1246. 1246 of your brief? Oh, no. Sorry. 1246 of the appendix. Oh, the appendix. Yeah. But that is of your brief in the district court. Oh, yes. It's our SJ brief below. And so at the bottom, the heading says the specific improvement is found directly in the asserted claims. Well, yes. But you don't talk about, as far as I can see, the only places that you talk about location are 1239 and 1247. So we talk about it at 1247. Well, I mentioned 1247. So other than 1239 and 1247, where is location discussed in your brief? So location, at the bottom of 1246, we specifically say when we refer to the flow of communication, we use that, we define that to refer to the specific limitations, including E, which is the location determination, and G to I, which is the notification and the response. I mean, if I were the district court, frankly, and I read the brief you submitted to the district court, and then I read the brief that you submitted to us, I would have been very surprised to see that suddenly location becomes the centerpiece of your appeal. It was not. I think it's fair to say. I think it's fair to say that it was not a centerpiece of your presentation to the district court. You would agree with me on that. Yes. It was not the centerpiece. But the argument that we made below and here is that the invention is directed to a specific method that improves prior file sharing, particularly URL-based file sharing. And at 1246 through 1247, what we call the flow of information below, we've used a kind of simpler terminology here, but we specifically say that that includes limitation E of claim 10, which is the location determination, and limitation G through I, which is the notification that 1247, we talk about it in text. Counselor, you're into your bottle of wine. You can continue or save it as you wish. I'm going to save it. Mr. Bell. Judge Lorin, may it please the court. Good morning. Gabe Bell on behalf of the Appellee Walmart. I'd like to pick up where the court left off with the location-based limitations. I think the court grasps that it was not the centerpiece. It was mentioned in scattered places. And I think the proof is ultimately in the pudding below, where you look at the hearing that they did before the district court, and it was an extensive hearing. The district court explored all the issues, and location was mentioned exactly zero times. So even when the district court repeatedly said anything more, anything more, anything more, we didn't hear word one about location. But this presents us with a problem that we face frequently, which is an argument that is mentioned but not emphasized in the district court. It gets us into the whether the argument was fully developed line of cases and so forth. This was mentioned in the brief. It was. And there is, in fact, I think at 1246, 1247, a whole sentence is devoted to location. So what would you, if you were in our position, what would you say with respect to the question of whether this has been waived, given that it was discussed in two places in the brief? Yeah. I think it's discussed at such a generic level and not connected to any particular technological advance. So certainly they mentioned the limitations in passing, as one would expect from anyone. But they didn't go on to spell out, and this is why it improves the technology. And so that, for that reason, I would say it's waived. But ultimately, I would say it doesn't matter. I would say it doesn't matter because, as the court has noted, making location-based determinations, this court has repeatedly found, including in Bitiero, for example, controlling access there to a bet, including making notifications to the users about the bet and then ultimately allowing or disallowing the bet based on the location. And that's not a one-off. There were location-based restrictions in Bridge and Post, for example, and in Sanderling, both of which phrased the abstract ideas there as focused on tailoring information and using IDs. So in Bridge and Post, the first patent in that case, the 574 patent, had a persistent ID. And this court said, although there were many other limitations, including restricting based on location, the claims were ultimately directed to sharing content or tailoring content based on a persistent ID. So that's why I say it doesn't matter. What was the case you mentioned besides Bridge and Post? You mentioned one. Sanderling, Your Honor. Sanderling. Sanderling. Sanderling from 2023. It's a precedential decision. It was restricting the provision of software, actually, based on the user's location. And we didn't focus on this in our brief. I don't think you cited that. We did cite it one time, Your Honor. So I don't want to – I can find the exact list. Well, that's right. But I didn't see it in the table of cases. It was cited. It wasn't the focus. B.T. Arrow, I think, disposes of the location-based arguments by itself. The others are just kind of icing on the cake. And so whether you combine the two abstractions or whether you think of it as focused on the persistent ID or, excuse me, the unique ID, ultimately it's an abstraction that boils down to mental-type steps, as this court said in Personal Web, where you had a content-based combined with other information-processing functions, restricting access, sharing files, and deleting files. And this court said, although you can kind of chain these two things together, they're still both abstractions, and therefore it doesn't make the overall claims any less abstract. I think we're squarely in that realm here, where you're talking about sharing content using an ID. I noticed when I checked in this morning at the desk, there was a QR code where I could go and get the information to log into the network. It was provided directly to me, and yet it went up to the network and provided me with information. I mean, the examples are endless, from the library context to the coat-check context to the package-retrieval context. It's ultimately a commonplace concept that this court has repeatedly found abstract in it. You know more about what goes on in this court than we do. Well, I wouldn't presume that, Your Honor, but thank you. So I'm happy to answer any additional questions. Well, you may have already addressed this point in what you just said, but just to make sure I have your position on this, Mr. Hashim is distinguishing cases like Bottiero and Capone by saying that they don't involve the actual transfer of information based on location. Bottiero involves eligibility of a gambling exercise based on location, but not the transfer of information. And that is, if I'm fairly characterizing his argument, is a kind of mechanical computer-based functionality that is not only not abstract, but also, if need be, satisfies the claim, the requirement of Part 2 of the Alice test. If you can address that. Of course, Your Honor. I think that actually makes it more abstract than Bottiero, not less. Because Bottiero actually had to control the functionality of whether you're allowed to make the bet. So that is information. I would argue more complex information. And then, in addition, if you look at... But it's not information that's conveyed to the better, as I understand it. The better gets only one piece of information, which is you're not in an appropriate jurisdiction. You're out. Thumbs up, thumbs down. Right. That's the information. But if you look at a case like secured mail, there you are very clearly using a QR code that somebody has previously stored information that's associated with it on one end, and then transferring that QR code to somebody else. It can be hand-delivered. And that somebody else scans the QR code and retrieves all that user-specific, recipient-specific information and can see it. So there's an example where information is transferred in, I would argue, almost exactly the way it's transferred here. So maybe a difference between this case and secured mail is that here we have the limitation of location. And how does that affect... How would that affect, let's say, secured mail? Yeah, so I don't think it affects it at all. In secured mail, you effectively had a location-specific limitation built in because the mail goes to one recipient. So it's even more specific in the location restriction there. You have one person receiving it and scanning the QR code. You don't have the whole neighborhood learning about it or the whole world learning about it. It's exactly one location. So I think that's even more specific. But if you look at other cases where the location-based restrictions were even combined with using a user ID, for example, Bridge and Post was one such example. It had both of those elements and didn't make it any less abstract. So you combine these kind of mental processes that are familiar in the real world, they're familiar in the computer context. My friend said that these don't require the use of URLs. I mean, the claims don't actually say that. But moreover, the specification points out that you can use a URL to transfer the content rather than sending the content directly. So there is a public URL that could be part of this system. So all the security limitations that they mentioned, they're not anywhere in the claims, and I think the specification refutes them. Likewise, the privacy concerns that he mentioned, not giving an e-mail address. Again, the specification says you can read on a system that would provide an e-mail address to access the content. So this just points up the problem. These claims are generic in a way that ultimately reads on abstractions and general-purpose computer components, not anything technologically advanced. I'm happy to answer further questions. Otherwise, I respectfully ask for the district court to be affirmed. Thank you, Mr. Bill. Thank you. Mr. Hasham will give you three minutes for rebuttal. So I just want to briefly address the waiver point very briefly. So the district court addressed the proximity determination appendix 8. He said the location is just part of the generic environment for performing the claim. And so that issue is before the court. We also addressed it at 1252 and 1253. We said it was directed to location-based file sharing. And then we criticized Walmart's library analogy for not including location. And so on the library analogy, which my friend here mentioned, fundamentally it has the same problem as DDR, which is that it doesn't confront the technical problem that is unique to computers. In the real world, location naturally limits access. But computers don't work like that. In a computer, you use a URL to identify where the file is. And whether I'm here or whether it's a hacker in Russia, they can get access to the file if you have the URL. And so what the invention does is it changes how file transfer works by taking out the URL. And, yes, the fact that it doesn't use a URL is not in the claim. But what the claim says is the way that you get the file is by going to the location and getting a notification, not using a URL. And you might use URLs somewhere else under the hood, but the claim doesn't require it. How is that like DDR? In DDR, we were dealing with a claim that dealt with a technological solution to a technological problem. That's certainly not the case here. So in DDR, what you had was the analogy that the invention was just like having a store within a store. And what the court said in DDR is that analogy wasn't helpful because it didn't confront the technical problem that when you click on a link, you're instantly transported somewhere else. Similarly here, you can say a library, it's similar to a library, and the library analogy doesn't work for various reasons. For example, the claims have two users and a server, and the Walmart's analogy only has a patron and a librarian. But most importantly, computers by default don't operate the way where you walk up to a librarian and you have access to only what is in front of you. Computers by default use URLs to provide access to everybody in the world equally. And so to get rid of the URL is itself a technical invention. It's very similar to the Unilock case where the change in the protocol for how the invention worked was itself inventive. And finally, to look at secured mail and Votero, what's different in those cases, those cases don't change how the information is actually transferred. So for example, secured mail adds metadata to it, but it uses a private address, right, which the invention doesn't require you to do. So the invention would be like taking mail delivery and changing, instead of using a residential address, changing it in a way where you could send a mail to everybody in a neighborhood without knowing who is in that neighborhood. It changes the way the delivery works. Now, why is the Votero case not a case in which the use of, for example, GPS to determine location is a way to evade the problem of the URL? Because obviously the gambling institution has to determine where you're located. URLs sometimes can be helpful, but not necessarily. But a use of GPS to determine location is a way to evade the problems of the URL. Why isn't that just such a situation in which you are using a different device to determine location? You're still using a URL in Votero. You're adding a location tack-on to it, which is not what we have here, which is if I am trying to get the file, I don't need the URL for it. I can go to the location and get it, and that's different. Also, Votero is the classic example where you're solving a business problem. You're not trying to make the computer itself easier to use. And to go back to the example of trying to share a file in this room, if I want to share a file with people in this room, it's very inconvenient to share a Dropbox URL with 20 random digits in it that are needed for security. And the invention allows me not to have to do that. Thank you. Thank you to both counsel. The case is submitted.